KRUGER, J.,
Dissenting.—“Class arbitration is a matter of consent: An arbitrator may employ class procedures only if the parties have authorized them.” (Oxford Health Plans LLC v. Sutter (2013) 569 U.S. 564, 565 [186 L.Ed.2d 113, 133 S.Ct. 2064, 2066] (Oxford Health).) In this case, the trial court held that the parties’ agreement did not authorize class arbitration. Plaintiff Timothy Sandquist argues that the arbitrator, rather than the court, should have made that determination. The focus of my disagreement with the majority involves the question of federal law at the center of this case: Whether, under the Federal Arbitration Act (9 U.S.C. § 1 et seq. (FAA)), the availability of class arbitration under the parties’ agreement is a “gateway *262 question of arbitrability” that is presumptively for a court to decide, or whether it is instead a matter presumptively reserved for the arbitrator.
In Green Tree Financial Corp. v. Bazzle (2003) 539 U.S. 444, 451-452 [156 L.Ed.2d 414, 123 S.Ct. 2402] (Green Tree), a plurality of the United States Supreme Court took the view that the classwide arbitrability question is a procedural matter, rather than a gateway question of arbitrability. The majority of this court today draws on the reasoning of the plurality opinion to reach the same conclusion. But in more recent years, the United States Supreme Court has not only disavowed any notion that Green Tree decided the issue, it has also, as another court put it, ‘“given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one.” (Reed Elsevier, Inc. v. Crockett (6th Cir. 2013) 734 F.3d 594, 598 (Reed Elsevier), cert. denied (2014) 572 U.S._[189 L.Ed.2d 173, 134 S.Ct. 2991].) In light of these post-Green Tree developments, every federal court of appeals to consider the issue on the merits has concluded—in contrast to the majority’s holding today—that whether an arbitration agreement permits class arbitration is presumptively a question for the court, rather than the arbitrator. (See pp. 266-267, post.) Because I, too, read the high court’s cases as indicating that classwide arbitrability is a gateway question for purposes of the FAA, I would affirm the trial court’s decision in this case, and respectfully part company with my colleagues in the majority.
I.
“While the interpretation of an arbitration agreement is generally a matter of state law, [citations], the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration ‘is a matter of consent, not coercion,’ [citation].” (Stolt-Nielsen S. A. v. AnimalFeeds Int’l Corp. (2010) 559 U.S. 662, 681 [176 F.Ed.2d 605, 130 S.Ct. 1758] (Stolt-Nielsen).) Once a court has determined that the parties have agreed to submit a dispute to arbitration, the law presumes that the parties have also agreed to allow the arbitrator to decide subsidiary questions concerning arbitration procedure, resolving any doubts in favor of the “ ‘liberal federal policy favoring arbitration agreements.’ ” (Howsam v. Dean Witter Reynolds, Inc. (2002) 537 U.S. 79, 83 [154 L.Ed.2d 491, 123 S.Ct. 588] (Howsam).) But the law makes an exception to this rule for what the United States Supreme Court refers to as “ ‘question^] of arbitrability’ ” (ibid.), which “include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy” (Green Tree, supra, 539 U.S. at p. 452). Courts will not assume that the parties agreed to arbitrate such gateway matters “unless there is ‘clea[r] and unmistakable]’ evidence” to that effect. (First Options of Chicago, Inc. v. Kaplan (1995) 514 U.S. 938, 944 [131 L.Ed.2d *263 985, 115 S.Ct. 1920] (First Options).) This, the high court has explained, is because to interpret “silence or ambiguity” in the parties’ agreement as consent to submit the matter to an arbitrator “might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.” (First Options, supra, 514 U.S. at p. 945.) The rule governing “ ‘question^] of arbitrability’ ” thus applies in “circumstance [s] where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.” (Howsam, supra, 537 U.S. at pp. 83-84.)
In accordance with these principles, the resolution of a “ ‘question of arbitrability’ ” is reviewable by courts de novo. (Oxford Health, supra, 569 U.S. at p. 569, fn. 2 [186 L.Ed.2d at p. 119, fn. 2, 133 S.Ct. at p. 2068, fn. 2].) By contrast, under the FAA, decisions assigned to an arbitrator are reviewable for “misconduct rather than mistake.” (AT&T Mobility LLC v. Concepcion (2011) 563 U.S. 333, 350-351 [179 L.Ed.2d 742, 131 S.Ct. 1740] (Concepcion).) When an arbitrator has been given the authority to decide whether a party’s agreement provides for class arbitration, his or her decision generally will stand “regardless of a court’s view of its (de)merits.” (Oxford Health, supra, 569 U.S. at p. 569 [186 L.Ed.2d 113, 133 S.Ct. at p. 2068]; see 9 U.S.C. § 10.)
In Green Tree, a plurality of the United States Supreme Court reasoned that whether an arbitration agreement authorizes class arbitration does not fall into this category of gateway questions of arbitrability because “the question is not whether the parties wanted a judge or an arbitrator to decide whether they agreed to arbitrate a matter,” but “what kind of arbitration proceeding the parties agreed to.” (Green Tree, supra, 539 U.S. at p. 452.) This view did not garner a majority, as the high court has since emphasized. (See Stolt-Nielsen, supra, 559 U.S. at pp. 678-679, 680; accord, Oxford Health, supra, 569 U.S. at p. 569, fn. 2 [186 L.Ed.2d at p. 119, fn. 2, 133 S.Ct. at p. 2068, fn. 2].) And although the United States Supreme Court has not had occasion to revisit the question of who decides classwide arbitrability, subsequent decisions of the court have undermined Green Tree’s premise that questions of classwide arbitrability merely concern the “ ‘procedural mode’ ” available for the presentation of the plaintiff’s claims. {Stolt-Nielsen, supra, 559 U.S. at p. 687.)
In Stolt-Nielsen, the court considered whether an arbitration panel erred in ordering class arbitration when the parties’ agreement was “ ‘silent’ ” on the question and the parties had stipulated that they had never reached an agreement on the issue. (Stolt-Nielsen, supra, 559 U.S. at pp. 666, 668-669.) *264 Answering that question in the affirmative, the court rejected the arbitration panel’s class arbitration decision as “fundamentally at war with the foundational FAA principle that arbitration is a matter of consent.” (Id. at p. 684.) The court acknowledged that, “[i]n certain contexts, it is appropriate to presume that parties that enter into an arbitration agreement implicitly authorize the arbitrator to adopt such procedures as are necessary to give effect to the parties’ agreement. [Such] . . . ‘ “ ‘procedural’ questions . . . grow out of the dispute and bear on its final disposition” [and] are presumptively not for the judge, but for an arbitrator, to decide.’ ” (Id. at pp. 684-685, quoting Howsam, supra, 537 U.S. at p. 84.) But classwide arbitrability, the court concluded, does not fall within that category “because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.” (Stolt-Nielsen, at p. 685.)
The court described the “fundamental” differences between bilateral and class arbitration—and has later expounded on them—in two ways that are particularly relevant here. (Stolt-Nielsen, supra, 559 U.S. at p. 686.) First, as the court described it, the switch from bilateral to class arbitration is one that strikes at the heart of the bargain the parties make when they agree to “forgo the procedural rigor and appellate review of the courts” in favor of the “lower costs” and “greater efficiency” of private dispute resolution. (Id. at p. 685.) For one thing, the court pointed out, class arbitration dramatically increases the risks to defendants: “[T]he commercial stakes of class-action arbitration are comparable to those of class-action litigation, [citation], even though the scope of judicial review is much more limited, [citation].” (Id. at pp. 686-687.) And for another, as the court later elaborated in Concepcion, “the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.” (Concepcion, supra, 563 U.S. at p. 348; see 14 Penn Plaza LLC v. Pyett (2009) 556 U.S. 247, 269 [173 L.Ed.2d 398, 129 S.Ct. 1456] [“[T]he relative informality of arbitration is one of the chief reasons that parties select arbitration.”].) Thus, “the relative benefits of class-action arbitration are much less assured, giving reason to doubt the parties’ mutual consent to resolve disputes through class[] arbitration.” (Stolt-Nielsen, at pp. 685-686.) In support of the point, the court made express reference to its “questions of arbitrability” jurisprudence, citing First Options for the proposition that “ ‘one can understand why courts might hesitate to interpret silence or ambiguity on the “who should decide arbitrability” point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate’ contrary to their expectations.” (Id. at p. 686, quoting First Options, supra, 514 U.S. at p. 945.)
*265 Second, the high court noted, the switch from bilateral to class adjudication based on the parties’ agreement necessarily calls into question which parties, precisely, are involved, since ‘“[t]he arbitrator’s award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well.” (Stolt-Nielsen, supra, 559 U.S. at p. 686.) Stated differently, the classwide arbitrability decision does not merely concern the procedural mode for presentation of plaintiff’s claims, but whether the claims of other, absent plaintiffs, may be arbitrated as well. In that fashion, the question touches on the basic principle that parties must be permitted to specify not only what issues they will arbitrate, but “with whom” they will do so. {Id. at p. 683.)
For these reasons, among others, the court in Stolt-Nielsen rejected the idea that the availability of class arbitration is purely a matter of procedure. If that were so, the court explained, “there would be no need to consider the parties’ intent with respect to class arbitration” because procedural questions of that sort are “committ[ed] . . . presumptively to the arbitrator’s discretion.” (Stolt-Nielsen, supra, 559 U.S. at p. 687, citing Howsam, supra, 537 U.S. at p. 84.) But, in the court’s estimation, “the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties’ mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings.” (Stolt-Nielsen, at p. 687, fn. omitted.)
Later, in Concepcion, the court cited much the same set of considerations in holding that “the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of class [] arbitration procedures.” (Concepcion, supra, 563 U.S. at p. 336.) Class arbitration, the court reasoned, necessarily results in slower dispositions and higher costs. (Id. at p. 348.) Moreover, because class arbitration implicates the rights of absent parties, due process “requires procedural formality.” (Id. at p. 349 [“For a class-action money judgment to bind absentees in litigation, class representatives must at all times adequately represent absent class members, and absent members must be afforded notice, an opportunity to be heard, and a right to opt out of the class. [Citation.] At least this amount of process would presumably be required for absent parties to be bound by the results of arbitration.”].) The court thought it “unlikely” that in passing the FAA in 1925 Congress meant to entrust arbitrators “with ensuring that third parties’ due process rights are satisfied,” particularly since “class arbitration is a ‘relatively recent development.’ ” (Id. at pp. 349-350.) And finally, the court reiterated that “class arbitration greatly increases risks to defendants. . . . The absence of multilayered review makes it more likely that errors will go uncorrected. Defendants are willing to accept the costs of these errors in [classical] arbitration, since their impact is limited to the size of individual disputes, and presumably outweighed by savings from avoiding the courts. *266 But when damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable.” (Id. at p. 350.) The court concluded: ‘“We find it hard to believe that defendants would bet the company with no effective means of review, and even harder to believe that Congress would have intended to allow state courts to force such a decision.” (Id. at p. 351, fn. omitted.)
None of this, to be sure, amounts to a holding that the availability of class arbitration is presumptively a decision for a court, rather than an arbitrator. As the majority correctly notes (maj. opn., ante, at p. 260), that particular question was not before the court in Stolt-Nielsen, since the parties in that case had expressly assigned the determination to the arbitration panel (see Stolt-Nielsen, supra, 559 U.S. at p. 680). And certainly no such question was before the court in Concepcion, in which the parties’ agreement expressly disallowed class arbitration. (Concepcion, supra, 563 U.S. at p. 336.) But the import of the decisions seems fairly inescapable. If, because of the fundamental differences between bilateral and class arbitration, the court is unwilling to treat classwide arbitrability as a mere procedural matter—and thus unwilling to presume that parties’ ‘“silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings” (Stolt-Nielsen, 559 U.S. at p. 687, fn. omitted)—it seems rather unlikely that the court would be willing to presume that the parties have consented to allow an arbitrator to make an essentially unreviewable determination to the same effect. That is particularly true because, as the court has emphasized, the decision is one that does not affect the named plaintiff and defendant alone, but implicates whether other, absent plaintiffs will also be required to submit their claims to arbitration.
Given these recent developments in the high court’s jurisprudence, it is unsurprising that, at least to date, every federal court of appeals to consider the issue on the merits has held that the availability of class arbitration is a question of arbitrability for a court, rather than an arbitrator, “ ‘unless the parties clearly and unmistakably provide otherwise.’ ” (Dell Webb Communities, Inc. v. Carlson (4th Cir. 2016) 817 F.3d 867, 873-877; Opalinski v. Robert Half Internat. (3d Cir. 2014) 761 F.3d 326, 330, cert. denied (2015) 575 U.S. _[191 L.Ed.2d 558, 135 S.Ct. 1530]; Reed Elsevier, supra, 734 F.3d at pp. 597-599; but cf. Robinson v. J & K Administrative Management Services, Inc. (5th Cir. 2016) 817 F3d 193, 197 [acknowledging Stolt-Nielsen, but concluding the panel was bound by the ‘“rule of orderliness” to apply pre-Stolt-Nielsen circuit precedent following the plurality opinion in Green Tree].) As these courts have explained, the high court’s characterization of class arbitration in Stolt-Nielsen and Concepcion is difficult to reconcile with a view that would instead treat classwide arbitrability as *267 simply a question of “what kind of . . . proceeding” the parties have agreed to. (Green Tree, supra, 539 U.S. at p. 452, italics omitted; see maj. opn., ante, at pp. 252-253.)
The majority criticizes these decisions for confusing two separate issues: the importance of the classwide arbitrability question, on the one hand, with the parties’ expectations about who will resolve it, on the other. (Maj. opn., ante, at pp. 255-256.) The majority is correct, of course, that not every question that is “important” to the parties is necessarily a gateway question that is presumptively reserved for judicial determination. So, for example, in the First Circuit case on which the majority relies, the parties may have cared very much indeed about whether the claim at issue was time-barred under applicable arbitration rules, but the caring alone does not render the interpretation of the time limit rule a question of arbitrability for the court to decide. (PaineWebber Inc. v. Elahi (1st Cir. 1996) 87 F.3d 589, 599; accord, Howsam, supra, 537 U.S. at p. 85.) But Stolt-Nielsen rests on the premise that classwide arbitrability is a qualitatively different kind of question from a question about the proper interpretation of a timing rule because it so radically changes the nature of the bargain the parties strike when they agree to submit their disputes to arbitration. If, as the high court says, the nature of these changes “giv[es] reason to doubt the parties’ mutual consent to resolve disputes through class[] arbitration” from their general agreement to arbitrate (Stolt-Nielsen, supra, 559 U.S. at pp. 685-686), it is not much of a leap to conclude that these changes also provide reason to doubt the parties’ consent to permit an arbitrator to decide, in his or her essentially unreviewable judgment, whether the parties’ silence or ambiguous contract language constitutes consent to class arbitration.
The majority also dismisses the cases’ concerns about permitting an arbitrator to bring absent plaintiffs into the dispute, noting that “[ejven if an arbitrator were to conclude class arbitration is permitted, the arbitration would bring in only parties to the same form of arbitration agreement a court has already determined to be valid, and the same type of dispute a court has already determined to be within the scope of that agreement.” (Maj. opn., ante, at p. 257.) But as the majority elsewhere acknowledges, there is no requirement or guarantee that a court will ever make such a determination. (Id. at p. 247.) If the named plaintiff chooses not to contest the validity of the agreement or its application to a given dispute, then no court would have occasion to consider whether absent class members had also given their consent to arbitrate. It may be, as the majority suggests, that the answer is simply that arbitrators must provide absent plaintiffs with an adequate opportunity to opt out, or the arbitral award will not be binding on them. (Id. at p. 258; but see Oxford Health, supra, 569 U.S. at p. 574 [186 L.Ed.2d 113, 133 S.Ct. at p. 2071] (cone. opn. of Alito, J.) [arguing that an arbitral award cannot be binding unless absent class members have been required to opt in, *268 since “ ‘[arbitration is simply a matter of contract between the parties,’ [citation], and an offeree’s silence does not normally modify the terms of a contract [citation].”) But again, if the court thinks it ‘“unlikely” that the Congress that enacted the FAA would have entrusted arbitrators with the protection of third parties’ due process rights (Concepcion, supra, 563 U.S. at p. 349), it is unclear that the court would consider it any more likely that the parties would have intended to assign to an arbitrator the determination whether class arbitration is available. And in any event, the remedy for arbitral error—to permit collateral attacks on the award—is one that, as Justice Alito has noted, may reinforce doubts about the parties’ likely intent at the time of contract formation. (See Oxford Health, supra, 569 U.S. at p. 575 [186 L.Ed.2d 113, 133 S.Ct. at p. 2072] (cone. opn. of Alito, J.) [‘“Class arbitrations that are vulnerable to collateral attack allow absent class members to unfairly claim the ‘benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one,’ [citation], . . . [T]his possibility should give courts pause before concluding that the availability of class arbitration is a question the arbitrator should decide.”].)
II.
It may well be that further developments in the United States Supreme Court will shed new light on the issue before us. But unless and until the court revisits the issue, I would follow where the court has led. Because the majority today charts a different path, I must respectfully dissent.
Chin, J., and Corrigan, J., concurred.